**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **Vs.** ] | **CIVIL ACTION NO.:** |
| ] | **3:05-CV-71-B-A** |
| **HILL BROTHERS CONSTRUCTION,** ] | |
| **And ENGINEERING COMPANY, INC.** ] | |
| ] | |
| **Defendant.** ] | |
| _____] | |

## PLAINTIFF EEOC'S MOTION FOR EQUITABLE RELIEF

This matter was tried before a jury, beginning on November 14, 2006. The jury rendered its verdict on November 15, 2006, finding for the Plaintiff and against the Defendant, and awarding the aggrieved party, Melanie Peacock, $10,400 in backpay. On November 16, 2006, a Judgment was entered consistent with the jury's findings.

Comes now Plaintiff Equal Employment Opportunity Commission and files its Motion for Equitable Relief, which is supported by Plaintiff's Proposed Findings of Fact filed contemporaneously herewith.

I. Standards.

Here, where the Plaintiff has proven at trial that the Defendant employer has engaged in an intentional unlawful employment practice. There are no questions of fact regarding Defendant's liability. Thus, the Court has discretion to "enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include…any…equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-

-

5(g) (1); 42 U.S.C. § 12117(a). This discretion, however, is not "unfettered" and should be "measured against the purposes of Title VII." _Albermarle Paper Co. vs. Moody,_ 422 U.S. 405, 416-417, 95 S.Ct. 23632, 45 L.Ed2d 280 (1975). "[T]he district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." _Id.,_ 422 U.S. at 418.

Where a prevailing Plaintiff, such as the EEOC, has demonstrated "some cognizable danger of recurrent violations," a court should fashion appropriate equitable relief. EEOC vs. General Lines, Inc., 865 F.2d 1555, 1565 (10th Cir. 1989). Once the prevailing Plaintiff makes such a showing, the Defendant bears the "heavy" burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." United States vs. W.T. Grant Co., 345 U.S. 633 (1953); James vs. Stockham Valves and Fitting Co., 559 F.2d 310, 354 (5th Cir. 1977) ("absent clear and convincing proof of no reasonable probability of further noncompliance with the law, a grant of injunctive relief is mandatory"). Thus, it is not enough for an employer to suggest that an injunction is superfluous because Title VII already prohibits the unlawful conduct. EEOC vs. Goodyear Aerospace Corp., 813 F.2d 1539 (9th Cir. 1987).

Based upon the evidence adduced at trial, the verdict rendered by the jury, and the findings of fact and conclusions of law proposed by the Commission, the Court should find that the Defendant, Hill Brothers Construction Company, Inc., committed intentional, unlawful, employment practices of such a nature that strict court ordered equitable relief is warranted and necessary to protect other female truck drivers who were employed by Defendant, as well as other employees and applicants, from discrimination.

## II.    **Requested Equitable Relief**

Plaintiff requests that this Court order the following equitable relief.

-

1.    Hill Brothers Construction Company, Inc. ("HBC"), and its officers, agents, employees, successors, assigns and all persons in active concert or participation with it, are permanently enjoined from discriminating against any individual based on his or her sex and from retaliating against any employee or former employee of HBC who has opposed any act or practice made unlawful by Title VII of the Civil Rights Act of 1964, or because she or he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

2.    To the extent necessary, HBC shall expunge from the personnel files of Melanie Peacock (a) all references to the charges of discrimination filed against Defendant that formed the basis of this action; (b) all references to Ms. Peacock's participation in this action; and (c) any and all documents that refer, make reference, or relate to any alleged performance deficiencies by Ms. Peacock since she filed her charge of discrimination.

3.    Within thirty (30) business days after entry of the final Judgment in this matter, HBC shall provide Ms. Peacock a letter of recommendation addressed "To Whom It May Concern." In this letter, Defendant shall provide Ms. Peacock with a positive recommendation, reflecting her work history with Defendant prior to Ms. Peacock complaining of discrimination.  The letter shall be subject to the approval of Ms. Peacock.

4.   HBC shall provide training on Title VII according to the following terms:

A.   HBC shall retain and pay for a consultant who shall provide training during a Three year period commencing from the date of entry of final Judgment in this matter.  The consultant shall also evaluate HBC's training programs on Title VII and on recruiting, hiring, and promoting, including all videotapes and training manuals and make a written report, including recommendations.   The evaluation shall include an assessment

-

concerning the adequacy of Defendant's training programs as well as recommendations to improve such programs. The evaluation shall be submitted to HBC and to the Regional Attorney of the Birmingham District Office of the U.S. Equal Employment Opportunity Commission at the address in paragraph 10 herein within 90 (ninety) days of entry of the Final Judgment in this matter.

B. The consultant shall be a person(s) with scholarly credentials in the area of EEO compliance, specifically Title VII. HBC shall submit the name, address, telephone number, and resume of the proposed consultant, together with the dates of the proposed training seminars and the details of the contents of the training to the Regional Attorney of the Birmingham District Office of the U.S. Equal Employment Opportunity Commission at the address in paragraph 10 herein at least ninety days prior to the proposed date of the training. The Commission may object within thirty days from the date of the receipt of the listing of the proposed consultant and contents of the training program. In the event the Commission and HBC are unable to resolve the matter, the parties shall bring the issue(s) to the Court for resolution at least thirty days prior to the scheduled training session.

C. The consultant shall provide training to all HBC employees in the State of Mississippi, including, but limited to, all supervisors, managers, management officials, and all Human Resource officials, including employees eligible to pre-screen applicants. All employees, including, but not limited to, supervisors, managers, management officials, and employees who recruit, hire, promote and discipline employees, and all human resource employees shall attend the training sessions. HBC, at its election, may have more than one training session(s) each year to accommodate staffing needs. The

-

training session shall include classroom instruction by the consultant and not be provided exclusively by videotape, self-directed or self-paced use of training manuals and/or satellite. The first training session shall be conducted within four months of the entry of Final Judgment in this matter. The second, third, fourth and fifth training session for each store shall be conducted between nine and twelve months after the completion of the proceeding session.

D. The training session(s) shall include no less than four hours of instruction, including time permitted for questions and answers. The training shall not include more than sixty minutes of videotape instruction/presentation. The initial training sessions shall include overview of Title VII and its purposes; what constitutes discrimination under Title VII, including the definition of discrimination, types of prohibited activities including limiting individuals from specific job positions because of an unlawful basis; that discrimination in the hiring, firing, promoting, compensation, assignment or other terms, conditions or privileges of employment and retaliation, which violate Title VII; a clear and unequivocal statement that discrimination based on sex or retaliation is prohibited and will not be tolerated; HBC's policies and procedures for hiring and promoting individuals; a clear and strong encouragement of persons who believe they have been discriminated or retaliated against to report such concerns as well as to whom and by what means employees may complain; and if they feel they have been subjected to discrimination because of any basis protected by Title VII; a promise of maximum feasible confidentiality for persons who believe that they have been subjected to unlawful discrimination based on sex or retaliation; a description of the consequences, up to and

-

including termination, that will be imposed upon violators of Defendant's anti-discrimination policies.

E.   HBC's owner and President, Kenneth Hill, shall speak to the employees about disciplinary actions that can be taken against supervisors, managers and employees of HBC who commit acts of discrimination and/or retaliate or allow discrimination and/or retaliation to occur in the workplace, and the importance of maintaining an environment free of discrimination.

5.   Within ninety (90) days of entry of the final Judgment in this matter, HBC shall update its employee manuals and its promotion procedures to include a section which addresses the issue of limiting persons to specific job positions, including Title VII's prohibition against limiting persons because of a  basis protected by Title VII, what constitutes limiting, a statement that HBC will not limit applicants and employees because of any protected basis, and the need to consistently follow its promotion and transfer policies and procedures.  When these policies are updated, they shall be disseminated to all employees and management officials.

6.    The Commission, at its discretion, may designate Commission representatives to attend and participate in the training sessions described in the Order and the representatives shall have the right to attend and fully participate in the sessions.

7.  HBC shall evaluate its policies prohibiting sex discrimination and retaliation for its accuracy and effectiveness in preventing violations of Title VII in its work places.  Within ninety (90) days from the entry of final Judgment in this matter, HBC shall distribute its policies concerning sex discrimination and retaliation with revisions, if any, to all employees at its facilities located in the State of Mississippi.

-

8.   For the three-year period following entry of the final judgment in this matter, a "Notice to All Employees," attached as Exhibit A, shall be posted in a prominent place frequented by all personnel of HBC at each job site in the State of Mississippi.  Such Notice shall be the same type, style and size as the printing on Exhibit A and shall bear the signature of the Honorable Neil Biggers.

9.   During the time HBC is enjoined from discriminating against employees and/or applicants because of sex, all allegations of sex discrimination under Title VII, raised internally or formally by means of filing a complaint with the EEOC, HBC shall retain an outside consultant, qualified in conducting such investigations, to investigate the allegations and report in writing to HBC within 30 (thirty) days of the date HBC receives such an informal complaint or a charge of discrimination.   The consultant shall recommend appropriate action based on the nature of the allegations and the investigative findings. Neither Kenneth Hill, Gerald Hill, nor Jane Childs shall participate in Defendant's decision whether to accept or reject the consultant's recommendation.

10.   HBC shall report in writing and in affidavit form to the Regional Attorney of the Commission's Birmingham District Office at 1130–22nd Street, South, Suite 2200, Birmingham, Alabama 35205, beginning six months from the date of the entry of Order, and thereafter every six months for the duration of the Order the following information:

A.   Any changes, modifications, revocations, or revisions to its policies and procedures which concern or affect the subject of sex discrimination and retaliation, including those changes required in this Order.

B.   The name, address, position, social security number, and telephone number of any employee who has brought allegations of sex discrimination, or retaliation against HBC

-

personnel in the State of Mississippi including but not limited to management officials, vendors, agents, or employees during the six months preceding the report, and whose allegations are known to HBC. The nature of the complaint, investigatory efforts made by HBC and the corrective action taken, if any, shall be specified. The report required in paragraph 10 shall also be provided.

C. The registry of persons attending each training seminar required by this Order and a list of current personnel employed by each store in the State of Mississippi on the day(s) of the seminar training session(s) within thirty days after each training seminar.

D. A sworn affidavit by an HBC Human Resources representative at the District level stating that the Notice required in paragraph 8 of this Judgment was posted and the locations where it was posted.

E. HBC shall maintain a log of all requests for transfer and/or promotion. The log, at a minimum, shall include the individual's name, sex, requested position, and the name and sex of the individual selected for the position. The log shall be provided to the EEOC with the six-month reports required herein.

### III. ARGUMENT.

The evidence shows that each element of equitable relief sought is appropriate and necessary to accomplish the goal of eradicating discrimination and preventing the recurrence of discrimination in this Defendant's workplace. The evidence presented at trial shows cognizable danger that HBC will continue to violate Title VII by discriminating against Ms. Peacock and other female individuals because of their sex or in retaliation for opposing unlawful practices or filing a charge of discrimination. In addition, HBC is unable to present "clear and convincing proof of no reasonable probability of further noncompliance with the law," let alone demonstrate

-

that there is no reasonable expectation that it will not commit like violations of Title VII in the future.

The equitable relief sought is tailored to address the circumstances existing in HBC business that allowed the discrimination to occur against Ms. Peacock. Because the discrimination was ratified at the highest levels of HBC authority, the equitable relief sought is not overly broad even though it is company wide. The proper scope of an injunction can include even lawful conduct that is shown to be closely related to the proven unlawful conduct. See EEOC vs. Wilson Casket Co., 24 F.3d 836, 842 (6th Cir. 1994) (injunction prohibiting Defendant from leaving the business premises with any female employee upheld in sexual harassment case). Finally, "[i]n fashioning relief against a party who has transgressed the governing legal standard, a court of equity is free to proscribe activities that standing alone, would have been unassailable." Kentucky Fried Chicken Corp. vs. Diversified Packaging Corp., 549 F.2d 368, 390 (5th Cir. 1977).[1]

The relief should extend to the State of Mississippi because HBC has ratified discrimination at the highest levels –Defendant's Vice President testified at trial that managers had the authority to hire and fire at will. She also testified that there exist no measures to ensure that the authority was not utilized in a discriminatory manner. HBC's lack of training is also an issue as is the fact that evidence was presented at trial that officials saw no need to investigate for potential discriminatory conduct even though it was noted in the official's calendar that a female employee raised a complaint of sex based discrimination. Thus, this equitable relief is likely to

---

[1] Although the scope of a prohibitory injunction is normally limited to the scope of the unlawful conduct at issue and is generally limited to enjoining the specific conduct found to violate the law, courts may define the scope of what is "at issue" broadly. See e.g., Bennun vs. Rutgers State Univ., 737 F.Supp. 1393, 1401, 1410 (D.N.J. 1990) (plaintiff who won a national origin promotion claim but lost a retaliation claim is entitled to an injunction against retaliation as well), aff'd in relevant part, 941 F.2d 154 (3d Cir. 1991).

-

be effective in eliminating future discrimination, without placing any undue burden on HBC's business.

The first element of the proposed equitable relief is injunctive in nature. An injunction is a remedy specifically authorized to correct and prevent Title VII violations. The proposed injunction addresses the specific forms of discrimination which were proven at trial, including protections against retaliation, which is particularly critical in this case. See, e.g., EEOC vs. Goodyear Aerospace Corp., 813 F.2d at 1543 ("[i]njunctive relief would deter defendant from future unlawful discrimination and would protect the aggrieved employee from retaliation for filing a Title VII charge); Bennun vs. Rutgers State Univ., 737 F.Supp. at 1410 ("enjoining any and all discriminatory or retaliatory actions against plaintiff").

Defendant may argue that such an injunction is unnecessary because HBC has published its own prohibitions against discrimination in its employee manual, notwithstanding the absence of any reference to retaliation. The mere existence, however, of such policies are insufficient to guarantee that HBC's decision-makers will actually comprehend their obligations and comply with Title VII. Moreover, Defendant's EEO officer, Tina Robertson failed to provide equal employment opportunity training to managers, even though she indicated that, no measures were in place to train managers on the manner in which they are to comply with the antidiscrimination policy. Additionally, Jane Childs testified she did not investigate a complaint of discrimination because she did not believe it was a valid complaint

Lastly, even after Ms. Peacock filed a charge of discrimination, HBC did not implement procedures to train managers on how to comply with Title VII. Thus, there is no evidence to suggest that this Defendant will provide the appropriate training to ensure its workplace is free from employment discrimination.

-

HBC may also argue that an injunction is unnecessary because Title VII already makes it unlawful to discriminate against employees and applicants because of their sex or to retaliate. However, the mere existence of the law is an insufficient incentive to ensure Defendant's compliance. Because of the statutory caps on damages, HBC most likely would face a maximum exposure of $300,000, plus back pay and out of pocket expenses, for any subsequent violation of Title VII. One of the company officials has already indicated her lack of concern for monetary matters by her refusal to investigate a complaint of discrimination. An injunction would (1) instruct Mr. Hill and HBC that they must comply with Federal law; (2) subject the company to the contempt power of the Federal courts if Defendant commits future violations; and (3) reduce the chilling effect of any retaliation on Defendant's employees' exercise of their Title VII rights. See EEOC vs. Goodyear, 813 F.2d at 1544. Paragraphs 2-3 of the equitable relief proposed by EEOC, which provide for expungement of Ms. Peacock's personnel file and an appropriate letter of recommendation for Peacock, are aimed at curing HBC's discrimination against Ms. Peacock and ensuring that she can provide prospective employers' with a letter of recommendation that adequately sets forth her work history with Defendant.

Paragraphs 4-9 concern educating HBC's decision-making employees about Title VII to avoid future violations, educating the employees about their rights under Title VII, and protecting employees by removing the investigations into allegations of discrimination from the chain of command of Mr. Hill. Each of these elements of relief is appropriate and necessary.

In this case, the discriminating officials' conduct was ratified by a corporate officer and EEO official, who testified she did not pursue allegations of discrimination because she did not perceive the allegations of discrimination to be valid. The relief requested is necessary to ensure that the policies will work even if the alleged discriminating officials are the owner and President

-

or other high ranking officials of Defendant. The relief is also tailored for this employer who has failed to offer its employees and management officials EEO training even when encouraged to do so by HBC's Director of Human Resources. This relief is also tailored to this employer whose owner and company representative and former EEO official did not pursue allegations of discrimination because she did not deem the allegations worthy.

Posting a notice and advertising HBC's intent to comply with Title VII will serve the dual purpose of educating HBC's employees and potential employees regarding their rights and remedies under Title VII and reminding HBC of its obligation to uphold those rights.

Requiring that allegations of sex discrimination or retaliation raised informally or formally be investigated by a qualified outside consultant will help to ensure that such allegations will be investigated objectively because the investigator will be outside the chain of command of Defendant's owner and officials.

Next, requiring the Defendant to report its compliance to the EEOC is necessary to ensure that HBC is, in fact, in compliance with the Court's order regarding equitable relief.

Finally, all elements of the equitable relief sought are necessary for the additional reason that HBC has shown no contrition whatsoever for its unlawful conduct _U.S. vs. W.T. Grant Co.,_ 345 U.S. 633; 73 S.Ct. 894, 97 L.Ed.2d 1303 (1953) (in considering whether to grant an injunction, court should consider how much contrition is expressed by a Defendant). Instead, this Defendant has insisted that its conduct with regard to Ms. Peacock was not discriminatory but was for a legitimate business reason. Also, when the discrimination was ratified at the highest level, additional safeguards are necessary to protect employees because standard policies have little or no effect when managers and employees know that management at the highest level condones and participates in discriminatory conduct.

12

-

Moreover, HBC has provided no assurance that it will not engage in like conduct in the future by failing to provide its managers with any training concerning issues of sex discrimination or retaliation since Ms. Peacock filed her Charge of Discrimination or this action was filed.

## IV.  CONCLUSION

The Equal Employment Opportunity Commission respectfully requests that this Court grant the equitable relief outlined in this Motion and such further relief as this court deems appropriate.

Respectfully submitted,

Ronald Cooper
General Counsel

James Lee
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1801 "L" Street, Northwest
Washington, D. C.

_____S/  C. Emanuel Smith_____
C.  Emanuel Smith (MS 7473)
Regional Attorney

_____S/  Mildred Byrd_____
MILDRED BYRD (LA 03741)
Supervisory Trial Attorney

**S**/_____Valerie Hicks-Powe_____
Valerie Hicks Powe (ASB 1127W70V)
Senior Trial Attorney

___ _____

-

John M. Graham
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Telephone: (205) 212-2046